UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID HALTERMAN, <br><br> Plaintiff, <br><br> v. <br><br> LEGATO SOFTWARE, a Division of EMC CORPORATION, dba EMC PERIPHERALS, INC. and DOES 1-10, <br><br> Defendants. | Case No.: C 04-02660 JW PVT <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AN INDEPENDENT MENTAL EXAMINATION AND ANSWERS TO DEPOSITION QUESTIONS** |

On July 26, 2005, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on a motion to compel filed by Defendant Legato.[1] Based on the briefs and arguments presented,

IT IS HEREBY ORDERED that Defendants' motion to compel is GRANTED in part and DENIED in part.

///

///

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

## I.     INTRODUCTION

Plaintiff Halterman is claiming emotional distress stemming from his employer's actions.[2] Defendant Legato hired Plaintiff in 2002 to the position of Senior Products Manager. Plaintiff worked with a team of analysts on calculations of historical, current and projected financial performance of certain Legato products. Plaintiff alleges that during the course of his work, he found that Legato renewal rates were lower than claimed and that the company was overstating projected revenue. At that time, Legato was preparing for an acquisition by the EMC Corporation.

In late April and May of 2003, when Plaintiff informed his superiors of the problem, they allegedly rebuked him for exposing the negative information. On May 15, 2003, Plaintiff's manager expressed concern about Plaintiff's calculations and suggested that Plaintiff was not focused and was exhibiting "mood swings." Plaintiff explained that he was worried about his son, who was in the military and deployed in Iraq. Plaintiff also informed his manager that he was seeing a doctor and taking medication for depression.

Plaintiff alleges that his manager (and later Legato's vice president) instructed him not to disclose to anyone the information he had discovered. Plaintiff says he objected, claiming that he "intended to escalate his concerns over this censorship." On June 12, 2003, after Plaintiff's multiple attempts to address his concerns about the revenue projections with management, Legato placed Plaintiff on administrative leave, barring him from their offices and prohibiting him from talking to anyone. Legato fired Plaintiff on July 7, 2003. Plaintiff claims that as a result of his alleged mistreatment and termination by Legato, he suffers from sleeplessness, loss of appetite, irritable bowels, general withdrawal, and isolation.

While Plaintiff consents to a mental examination, he insists 1) that the examination be limited to eight hours; 2) that the inquiry not address Plaintiff's sexual or financial matters; 3) that the inquiry be limited to five years prior to Plaintiff's employment with Legato; and 4) that the psychiatric interview not be tape-recorded and if it is recorded, that the tapes not be

---

[2] The background facts are taken from the parties' submissions.

provided to counsel.  Defendants move to compel an examination 1) lasting eleven hours;[3] 2) addressing Plaintiff's sexual history; 3) spanning Plaintiff's entire lifetime; and 4) recorded onto audiotape.  Defendants also ask that Plaintiff be ordered to answer questions at his deposition about his mental health during the course of his life.

## II.    DISCUSSION

### A.    Legal Standards

Federal Rule of Civil Procedure 35(a) allows a court to order a party to submit to a mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control if the mental condition of that party is in controversy.  The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties.  Additionally, the order shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. FED. R. CIV. P. 35(a).

When a party opposing a Rule 35 examination admits that his or her mental state is in controversy, the burden of showing why an inquiry into his or her mental state should be limited rests on that party. *See in re Lifschutz*, 2 Cal. 3d 415, 436 (1970).  In order to have a court limit the length of a mental evaluation, a party must offer persuasive evidence that the amount of time is unreasonable. *See, e.g., Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 654 (D. Kan. 2003); *Abdulwali v. Washington Metro Area Transit Authority*, 193 F.R.D. 10, 15 (D.D.C. 2000) (rejecting plaintiff's request that the Rule 35 examination be limited to three hours where plaintiff failed to offer any basis for the limitation and to do so would subvert the truth-finding function inherent in Rule 35 examinations).

A plaintiff does not necessarily place his mental condition in controversy when he makes a "garden-variety" claim of emotional distress. *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 669 (S.D. Cal. 2001) (finding mental state not at issue for a plaintiff who alleged "garden variety" emotional distress and did not concede that his mental condition was "in controversy"

---

[3] At several points in their submissions, Defendants allege that they need twelve hours to conduct a mental examination of Plaintiff.  According to Defense counsel's May 17, 2005 letter, however, only eleven hours were originally requested.

within the meaning of Rule 35(a)).  Garden-variety emotional distress is "ordinary or commonplace emotional distress," that which is "simple or usual."  In contrast, emotional distress that is not garden variety "may be complex, such as that resulting in a specific psychiatric disorder."  *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003) (quoting *Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n. 6 (N.D.N.Y. 2000)).  Although Plaintiff in this case claims emotional distress that is easily qualified as "garden variety" and therefore arguably did not have to agree to a mental examination, he has conceded that his mental state is in controversy, presumably because he wants to offer at trial his own expert's testimony on this matter.

### B. Defendants Are Allowed Eleven Hours To Conduct the Mental Examination

Plaintiff concedes that his mental state is in controversy, but wishes to limit the time allowed to Defendants to conduct a mental examination.  In the instant case, Plaintiff has failed to meet this burden of showing why the inquiry into his mental state should be limited.

Plaintiff argues that the examination should be limited to eight hours because depositions are limited to seven hours by Rule 30(d)(2).  Rule 30(d)(2), however, does not govern mental examinations and is not relevant to the question at hand.

Plaintiff also contends that the "norm" for the sort of mental examination Defendants wish to conduct is "four hours or less" and that Defendants' expert, Dr. Zeitz, "has confirmed that he would diagnose and begin to treat a patient in his practice in less time than he proposes to spend with Plaintiff."  However, Plaintiff has failed to support this contention with any evidence.

Defendants submitted an affidavit by Dr. Zeitz, who has conducted such evaluations since 1983, stating that a twelve-hour examination is required in this case.  In their motion to compel, however, Defendants request an examination totaling eleven hours, with Dr. Zeitz requiring seven hours and Dr. Hooker requiring four hours.  The court will not second-guess the uncontradicted professional judgment of a board-certified psychiatrist with twenty-two years of experience.  *See Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 363 (D. Colo. 2004).  Nevertheless, the court will not order an intrusive examination to run longer than the moving party requested. Accordingly, it is ordered that Defendants' expert be allowed eleven hours to examine Plaintiff.

**C.     Subject Matter Scope of Mental Examination**

Defendants ask to allow Dr. Zeitz to inquire into:

> employment experiences that contributed to the alleged complaints of distress; any medical or psychological treatment for symptoms from the alleged distress; experiences between the end of Mr. Halterman's employment and the time of his examination to assess the stress factors contributing to the continuing symptoms; Mr. Halterman's current cognitive and emotional functioning; and Mr. Halterman's past personal history involving his family, significant developmental experiences, educational and occupational history, dating, and marital history, litigation history, history of disability and unemployment claims, financial history, and past medical and psychiatric history.

(Defs.' Mot. Compel at 6.)  The above-proposed scope of the examination is warranted to allow assessment of the nature, cause and extent of Plaintiff's emotional distress.[4]

Defendants also wish to ask Plaintiff questions about his sexual history.  Dr. Zeitz alleges that inquiries into Plaintiff "sexual history" are "potentially" relevant for a diagnosis because they "may" reveal "causes or effects."  The request smacks of a fishing expedition.

At no point in his complaint does Plaintiff allege any problem, misconduct or other issue remotely concerning sexuality or any sexually related matter.  However, some questions regarding Plaintiff's sexual history may be appropriate in connection with his dating and marital history.  Accordingly, Dr. Zeitz may ask Plaintiff questions pertaining to Plaintiff's sexuality only to the extent those questions fall within the scope of the inquiry into Plaintiff's dating and marriage history as it bears on his emotional distress claim.

**D.     Examination of Plaintiff's Entire Mental History is Allowed**

Plaintiff seeks to confine the mental examination to a time period extending to five years prior to Plaintiff's employment with Legato.  Plaintiff has not met his burden of showing such a limitation is warranted.

Dr. Zeitz contends that "[a]t least 90% of a psychiatric diagnosis is based on history" and that a five-year time limit "critically impairs" his ability to diagnose the Plaintiff.  In response,

---

[4] In his declaration, Dr. Zeitz states that he plans to determine "whether Plaintiff has a distorted perception of his interactions with Defendant." (*Id.* at ¶ 6.) Such a determination would assess the Plaintiff's credibility, and it is improper to use expert testimony to impugn a party's psychiatric credibility. *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998). Accordingly, Dr. Zeitz shall not make any inquiry into whether Plaintiff has a distorted perception of his interactions with Defendant.

Plaintiff argues that filing a claim of emotional distress does not automatically waive psychotherapist-patient privilege.  However, Plaintiff has conceded that his mental state is "in controversy," and has failed to present any evidence to support a five-year limit.  Defendants, on the other hand, have supported the extent of their inquiry into Plaintiff's mental state with an affidavit by a qualified expert.  Thus, the court will not limit the temporal scope of the examination.

### E. The Mental Examination May Be Taped

There does not appear to be any well-settled federal law either requiring or prohibiting the recording of Rule 35 examinations.  *Gavenda v. Orleans County*, 174 F.R.D. 272, 274 (W.D.N.Y. 1996).  Some courts, however, have ordered examinations recorded.  *See generally Zabkowicz v. West Bend Co.*, 585 F. Supp. 635 (E.D.Wis.1984); *Gavenda*, 174 F.R.D. at 274.  Moreover, California law provides that both the examiner and the examinee "shall have the right to record a mental examination on audiotape." CAL. CIV. PROC. CODE § 2032.530(a).

Dr. Zeitz wishes to record the examination on audio tape.  Plaintiff opposes the recording of the examination because he fears Defendants will use it as a "second deposition."  If such recording is allowed, Plaintiff requests permission to record the examination as well.  Without the court's permission or a stipulation by the parties, a second deposition would violate Federal Rule of Civil Procedure 30(d)(2).  While there is no evidence that Defendants intend to engage in any misconduct with the taped examination, it is nevertheless important to ensure that the examination does not become a "second deposition."

Since there is no prohibition on such recording and the audio tape of the examination may be useful to Dr. Zeitz in rendering a diagnosis, it is hereby ordered that both Dr. Zeitz and Plaintiff be allowed to tape the examination.  However, Dr. Zeitz may not disclose to anyone the tape, nor any of Plaintiff's verbatim statements, absent Mr. Halterman's consent. [5]

### F. Plaintiff Shall Answer Deposition Questions Regarding Mental History Over Five Years Prior to Working for Legato

During his deposition, Plaintiff's attorney instructed Plaintiff not to answer questions

---

[5] The expert's report may contain general information obtained during the examination, but must not quote Plaintiff.

concerning his mental history over five years prior to working for Legato. As discussed above, Plaintiff's mental state is at issue in this case and Defendants have a right to discover information pertaining to Plaintiff's mental history. Since Plaintiff has not presented any persuasive arguments in support of his refusal to answer the deposition questions, Defendants' motion to compel is granted on this point.

It became evident during the hearing that the parties agreed to fourteen hours for the deposition of Plaintiff and that only about thirty minutes of those fourteen hours remain unused. In order to facilitate fair and equitable discovery, it is hereby ordered that Defendants shall have two more hours, in addition to the remaining thirty minutes, to depose Plaintiff regarding his mental history over five years prior to working for Legato.

### III. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendants' motion to compel a Rule 35 examination is GRANTED.[6] Dr. John A. Zeitz shall conduct the psychiatric portion of the examination at 2471 Washington Street, San Francisco, California. Dr. William D. Hooker shall conduct the psychological portion of the examination at 350 Parnassus Avenue, Suite 309, San Francisco, California.[7] The date and time of the examination shall be mutually agreed to by the parties. The examination shall last no longer than eleven hours. The subject matter of the examination shall be limited to the nature, cause and extent of Plaintiff's emotional distress.

IT IS FURTHER ORDERED that both Plaintiff and Dr. Zeitz may tape the examination. However, Dr. Zeitz may not disclose to anyone the tape, nor any of Plaintiff's verbatim statements, absent Mr. Halterman's consent to disclose to all counsel.

IT IS FURTHER ORDERED that Defendants' motion to compel Plaintiff to answer deposition questions regarding his mental history over five years prior to working at Legato is

---

[6] There shall be no discussion between Defendants' counsel and the examiner while the examination is pending.

[7] Dr. Hooker's examination shall be limited to the following psychological tests: 1) the Wechsler Adult Intelligence Scale III;  2) the Minnesota Multiphasic Personality Inventory 2; 3) the Rorschach Psychodiagnostic Test, Exner Scoring; and 4) the Thermatic Apperception test.

1  hereby GRANTED.  Defendants shall have two hours, in addition to the thirty minutes remaining
2  from the prior deposition, to question Plaintiff about his mental history over five years prior to
3  working at Legato
4       IT IS FURTHER ORDERED that Defense counsel shall promptly provide a copy of this
5  order to Dr. Zeitz and Dr. Hooker.
6  Dated:  *8/8/05*

                                */s/ Patricia V. Trumbull*
                                PATRICIA V. TRUMBULL
                                United States Magistrate Judge